Case number 19-1256 et al. PCC Structurals, Inc. Petitioner v. National Labor Relations Board. Mr. Peterson for the appellant. Mr. Loro for the appellate. Good morning, Mr. Peterson. We'll hear from you. My apologies, Your Honor. I'm having just a momentary technical hiccup. Thank you. May it please the Court. William Peterson on behalf of Petitioner PCC Structurals, Inc. There are two main ways for this Court to grant the petition for review. The first, and I think the easiest, is to recognize that the Board's decision is insufficiently explained for this Court to review and to remand for further explanation. Alternatively, if this Court accepts the General Counsel's explanation for the Board's decision, then both the community of interest and the craft unit majorities should be reversed. Because the Board failed to apply or address its precedent in these areas, and with respect to the craft unit, PCC didn't receive notice that certification as a craft unit was at issue. Let me start with the Board's need to give an explanation. As this Court's well aware, as far back as Chenery, it's been clear that an administrative agency's decision can be affirmed only on the basis and for the reasoning set forth in the agency's decision itself. It's not enough for the agency to announce a conclusion. The agency has to explain its reasoning. The Regional Director gave very elaborate reasoning, correct? The Regional Director provided a significant analysis of the facts. And which we could review. I mean, there'd be no doubt if the Board had simply denied review and we were effectively reviewing the Regional Director's decision, there's enough there for us to look at. Absolutely, Your Honor. To be clear, my argument here hinges entirely on the splintered Board majorities. If two members of the Board had said... Why isn't all of that in context best understood as two different majorities have adopted each prong of the Regional Director's analysis? Well, Your Honor, it's because of the form of the Regional Director's analysis. If you look at the Regional Director's decision here, the Regional Director did set out the two tests separately. The Regional Director listed, here's the Community of Interest test, here's the craft unit test. But when it came to application... And found all of them met? Possibly. In our view, we think it's read best as the Regional Director amalgamating the two. A craft unit that possesses a Community of Interest. Yeah, I understand that. And he goes through all of the factors once rather than twice. But he uses this formulation, a craft unit that shares a sufficient Community of Interest. Excuse me. That could easily be read as saying two different things. One is there's a craft unit. And the second is there's a unit that has a sufficient Community of Interest. And when you look at his conclusion at the end of that analysis, he actually has separate sentences saying the craft unit factors are met and the Community of Interest factors are met. Seems like those are alternative holdings. Well, I think you could treat that as alternative holdings. But our concern here is given the similarity between the tests, we think there's an increased need for explanation by the Board. If we have two separate Board majorities, neither majority says, we think the Regional Director got everything right. Each one says, we think the Regional Director got part of the analysis right and is silent. But I think we infer from that that they are not adopting the rest of the Regional Director's analysis. And as we read the Regional Director's decision, it's virtually impossible to understand which portions of that were adopted by which of the two different Board majorities. And we think in particular... One majority adopted the sentences, the two sentences saying the Community of Interest test is met because those factors weigh, I forgot, five to three in favor. And the other majority adopted the immediately following sentence, which says the craft test is met because those factors weigh three to nothing or whatever. And if we were looking at this and providing explanations on appeal, we think that's something the Court could do. But I think this Court can't speculate, can't guess as to which portions of the Regional Director's analysis the Board adopted and why. This Court needs to see that reasoning in the Board's decision itself. It could be that the Community of Interest majority simply disagreed with the weighing of the craft unit factors. It could be that the Community of Interest majority disagreed perhaps factually with the consideration of the craft unit factors. It could be they thought the Regional Director erred by failing to apply North American aviation. We can't tell by looking at the Board's decision what the basis was for each of the separate majority's conclusions in a way that we could if two members of the Board had said, we think the Regional Director got everything right here. But, Your Honor, let me turn to the application of the tests themselves. And the first, of course, is the Community of Interest test. And we've talked about this in terms of a failure to apply Boeing. I think it's undisputed that Boeing was not a sea change in the law of Community of Interest. Boeing formally announces these three steps as three separate steps, but these steps are found in other decisions as well. In particular, here, they were found in the PCC Structurals 1 decision. That's Joint Appendix page 1095, where PCC Structurals 1 directs the same two considerations that you see in Step 2 and Step 3 of the Boeing analysis. That Step 2 is important, and we think it's meaningful, because Step 2 is a different perspective. Step 1 of the analysis looks at the Community of Interest among the petitioned for employees. Here, among the welders who would be included in the bargaining unit. Step 2 of the analysis shifts that perspective. It says don't look at the included employees. Look at the excluded employees and ask whether the excluded employees have meaningfully distinct interests in the context of collective bargaining that outweigh their similarities with the included employees. So, when you look at the Regional Director's decision, at the Board's decision here, you see the Regional Director focusing on the interests of the included employees. You don't see findings by the Regional Director about the interests of the excluded employees. And here, we think there are very strong arguments that the excluded employees do not have meaningfully distinct interests that outweigh their similarities with the welders. And it's important to, these are not simply interests in the abstract, but interests in the context of collective bargaining. So, when you look at what the employees might want to bargain over. Workplace discipline, that's shared both among the excluded employees and the included employees. Supervision is shared. Workplace rules are shared. Hours are shared. Excuse me. Wages, the employees are paid on the same wage scale, and there's an overlap among the wage scale for the welders and the wage scale for the other employees. To the extent that there are things that the excluded employees want to bargain over, those interests are shared equally with the included employees. Wasn't that argument specifically made as an objection to this bargaining unit definition? I mean, wasn't that really kind of, I guess, always a factor in this? Was that your client thought that the unit should be all of the employees? Yes, Your Honor. That's always been our argument. We think there are certainly errors at concluding at step one that the included employees have meaningfully distinct interests. And in particular, PCC Structural 1 emphasized the need to look at the practical realities of the workplace. And that, in our view, is what's most significant here. We have a highly integrated manufacturing process. The welders are working together with other employees who we think should be included to produce products. There's not a separate welding department. There's welders distributed among teams throughout all of the plants. And the welders are just one step in manufacturing a final product. And the third step of Boeing, again, also reflected in PCC Structurals 1, about any industry guidelines. You'll see we argued this with the regional director. It's joint appendix page 1145. We renewed it to the board, joint appendix page 1287. We argued that the board had given guidelines for manufacturing industries with highly integrated production processes. Now, what my friend's going to tell you is that's not the kind of industry guidelines that the board is talking about. But the problem is, right or wrong, that's an argument that needed to be decided by the regional director and the board in the first instance. And this court can't supply the reasoning on appeal that's absent from the board's and the regional director's decision. Let me turn now, unless the panel has questions, to the craft unit analysis. We think the easiest way of resolving the craft unit is to simply look at the notice given to PCC. The board's decision in PCC Structurals 1 reinstated the traditional community of interest test. It remanded to the regional director for application of the standard articulated herein. That's the traditional community of interest test. The regional director understood this and made this perfectly clear. I'd ask you to look at joint appendix page 1111. The regional director quotes the standard that the board directed that I use to analyze the appropriateness of the unit. He quoted that standard as the community of interest test. The union agreed with that as well in response to the show cause order, joint appendix page 1116, acknowledging that there is an eight category test, that's the community of interest test, that will be applied in this case. The first argument that you see for certification as a craft unit was after the hearing in the union's supplemental brief. The union mentions the craft standards but says that they complement the general community of interest inquiries. And in fact, that document, joint appendix page 1119, says that the board's decision remanded to the regional director, quote, to apply the community of interest test contained in United Operations. And closing, joint appendix page 1124, the union again acknowledged the community of interest test as the controlling analysis. So before the regional director, PCC had no notice that it needed to develop evidence or arguments about certification as a craft unit. And then finally, with respect to the merits of the craft unit inquiry, even apart from what we see as the due process violation, the concern there is the board's failure to address North American aviation. The leading post-Malincroft case regarding certification of welders as a craft unit. North American aviation is, in our view, indistinguishable here. There was a highly integrated production process that the welders were just one part of. And in North American aviation, the court concluded that any separate community of interest possessed by the welders was submerged into the more encompassing community of interest shared with the other employees. The facts relied on in Malincroft were the same as the facts that we're relying on here. I'll also note, my friend might suggest that the welders in North American aviation were less skilled than the welders in Hughes Aircraft, on which the regional director relied. Well, North American aviation actually discussed Hughes Aircraft, and it distinguished Hughes Aircraft not expressly, not based on the skill of the welders, but based on the fact that Hughes Aircraft was applying the outdated American potash test. In fact, what the decision says there, for the purpose of the decision, we shall assume there is no material difference in craft functions. So North American aviation was assuming that for craft purposes, the welders were equally skilled with the welders in Hughes Aircraft. Unless the panel has questions, I'll reserve the remainder of my time for rebuttal. Thank you. We'll hear from Mr. Lauro on behalf of the board. Thank you, Your Honors. Greg Lauro for the National Labor Relations Board, asking for the court to affirm the board's unit determination in order here. And before we get into it, just a couple quick points. I know the court understands that the issue before is whether the welder's unit is an appropriate unit, not the most appropriate unit. It's not material whether the larger unit preferred by my opponent is also an appropriate unit, and that their burden, and this is laid out in the briefs, is to show that the welder's unit here is truly inappropriate. And of course, when it comes to factual findings, like whether this or that factor supported the unit, that's judged under the substantial evidence standard. Now, going to the issues that were raised this morning, I think that when you look at the two board majorities, it's easy to discern each majority's path. As was discussed this morning, you have a very detailed decision by the regional director. One majority says clearly it's adopting the regional director's community of interest analysis. That's clearly laid out in the regional director's decision. Another majority says it's adopting the craft unit analysis.  And there's nothing confusing or problematic about an agency laying out two alternative, independent, and sufficient grounds for its decision. Well, it doesn't quite say we're adopting the analysis. They say this test is met or that test is met. We need to make a little bit of a leap to say that they adopted not simply a bottom line, which wouldn't be enough, but the reasoning below. I understand. I think it's clear from the context that what they're doing in reviewing the regional director's decision and saying we agree that this is an appropriate unit under community of interest is for the reasons stated by the regional director. And same with the craft unit analysis. I appreciate my opponent's arguments about how it could have been clearer. I just don't see, Your Honor, an unreviewable decision. I think it's clearly a reviewable decision, and I think it's well supported on the merits. For example, on the community of interest factor, the regional director factors either way. I think, like you said, it may go five to three or however you want to split up the eight factors. But the regional director went through all of them and explained that, yes, we have some factors like supervision and departmental structure and functional integration that could weigh against this particular unit. But we also have a lot of factors that make these welders distinct. They're a separate function. They're the only ones who do their function of welding on the product itself. They're the only ones who have the training and certification, which can take a significant amount of time to get and recertify. And because other employees don't have that training, they can't even temporarily do welding work. It's undisputed in this case that the non-welders that my opponent would include can't do the welding work. And I needn't belabor every factor. I know they're laid out in the decision you're reviewing. But on balance, looking at all the factors, it was reasonable for the regional director to find and for that board majority to adopt the finding that this is an appropriate unit under community of interest factors. And as to my opponent's point that the two tests were amalgamated improperly by the regional director, I don't think that's true. And it goes back to something your honor said this morning. First, the regional director properly laid out the two tests separately. Acknowledged consistent with precedent that a craft analysis in a case like this incorporates some community of interest factors. And after that, where necessary, where the craft analysis required analysis of an additional factor, he did that very clearly. And he said in the topic sentence, turning to the craft analysis, I find, for example, that although there isn't a formal apprenticeship program, there is extensive training and qualification requirements prior to, higher and after, which under precedent supports a craft finding. And he also did that on what's essentially an undisputed fact as to assignment of work on craft lines. That what I'll call the unit welders work is only assigned to the unit welders because only they are qualified and certified to do it. And so, again, as to the craft analysis, you have a reasonable, well-supported finding that goes through all the factors and which a board majority adopted. Now, with that in mind, your honor, I'm happy to answer any other questions the court will have. I would just point out on due process that I think the record's clear that this isn't a case where a party was given no notice whatsoever that this related craft unit issue was at play. The parties indicated their knowledge of and actually litigated that issue, as the record shows, even prior to the remand. And I won't belabor the point again because it's in the brief for your review, but the remand in PCC 1 didn't unring the bell of that prior notice and litigation and did not scrub the case of the possibility of litigating the craft unit issue further. I think on balance, my opponent had notice and a fair opportunity to be heard. We explained in our brief that the cases they cited where notice was denied are what I call no notice at all cases. There were, towards the end of the hearing, a party was blindsided, as the court put it, by an issue they didn't see coming and they didn't have a fair chance to respond. I think when you look at all the facts here, due process was satisfied, notice and an opportunity to litigate was satisfied. And again, Your Honor, I'm happy to answer any questions you may have. Does the board have any difficulty with the regional director's analysis to the extent it tended to merge the tests? I'm sort of struck as far as there are no different legal consequences depending on whether we call this a craft unit or some other kind of unit. And the respective tests seem to have a huge degree of overlap. And the craft unit test just seems to use community of interest concepts as applied to workers who have some specialized skill. So, I mean, what are we fighting over here between the two tests? What you say is true and what we're fighting over may be a question for my opponent. They feel the tests were improperly amalgamated. What you just said, frankly, I think shows they were not. It's just precedent holds there's a lot of overlap in the test in the non-construction industry. And as I noted before, the regional director did make that clear. Properly laid out both tests indicated under precedent where the craft unit adopts community of interest analysis and where there are some separate factors like assignment along jurisdictional lines. And then in his factor by factor analysis made it crystal clear when he was separately addressing the craft factors. And in his conclusion, and you noted this, he said at one point, I find this is a craft unit suitable for bargaining and has sufficiently distinct interest under community of interest principles. I guess the reason I'm asking you is I find that your opponent's due process argument is somewhat compelling. The other test is coming up relatively late in the process, except to the extent that the tests strike me as very similar. And I just want to make sure you don't have any problem with that premise, if that's how I'm thinking about it. The tests do overlap. And under these facts, the choice of test may not be outcome determinative because it's a proper unit either way. If I may correct one statement or clarify one thing or to make sure I understood your honor. I don't think the notice and litigation of the craft unit issue came late. I think it came early prior to the remand. And we have the sites in our brief where it was. It was mentioned in the first go round by the dissent. Right. Yes. But even before, if you're under me, it means the dissent in PCC one. But even before that, after the hearing, the first year before we get to PCC, the parties are litigating the craft issue. And my opponent does split hairs a little bit here. There's a quote in the union's brief at that time that the unit here is akin to a craft unit because of their distinct licensing and experience and certification requirements. And the argument is akin to craft isn't the same as arguing craft. I don't know about that. I think it shows notice of the issue. And my opponent responded back then before PCC one by arguing the same case, North American Aviation, that they're arguing now for craft purposes. So I think the bell of notice was rung back then very early in the process. And I just wanted to be fair to the record on that. Your honor. Thank you for raising. All right. Thank you. Any further questions, Judge Katz's or Judge Randolph? No. All right. Thank you. If I may just say in conclusion, I do think that viewing the record as a whole and the regional director's detailed analysis and the board's adoption of it. There is substantial evidence where it's the finding that this was an appropriate unit under both or either test. And thus, it should be a firm. There's no need for. Thank you, your honors. Thank you, Mr. Peterson. We'll give you two minutes on rebuttal. Thank you, your honor. Let me start with the notice question. We believe there is a world of difference between arguing that they are a community of interest that is akin to a craft unit versus actually seeking certification of the unit as a craft unit. When this court looks at the party's briefing prior to PCC structural one, you will not see the unit seeking certification as a craft unit. You will not see PCC responding by arguing the craft unit factors. So walk me through why the different tests with the selection of a test makes such a big difference. Because I mean, just sketching this out. There are five factors for craft unit. Then there's a general statement that in non-construction craft unit cases, you look to all the community of interest factors anyway. And when you look at the five craft unit factors. As far as I can tell, three of them have complete overlap with the eight other factors. And one is has only a slight variation training versus training and an apprenticeship program. And the only one that seems somewhat different is whether work is assigned on jurisdictional lines or not. Which is not hugely different from the question of what work they're doing. But in any event, you see where I'm going. It's just as a non-expert, it seems to me like this is a lot of fighting about relatively minor verbal formulations of the same basic concept. Well, Your Honor, I think you're right. And I will tell you that is why the board's decision is so strange in PCC structural two. If I'm right, doesn't that blow up your due process argument? No, Your Honor, because there are separate factors there. They wouldn't need to be argued separately. We simply didn't have a chance to make these arguments before the board. But let me point you to the board. If we're shifting from test A to Z, that's a bigger problem for the board than if we're shifting from test A to A prime. And this feels to me like we're shifting from A to A prime. Well, I think that's right. I will tell you what we know absolutely from the board's decision in PCC structural two is that the majority of the board viewed the tests separately and believed that the difference in the tests mattered. It might be one thing if two members of the board had said we agree with that. Again, I don't have a great explanation for why the board majorities reach different decisions. I don't think my friend has a great explanation. And that's why the board's failure to explain what it sees as the difference between these tests is so significant. But then they seem to say in PCC three that there's no big difference. Well, we weren't arguing. I think the board, I'm not going to say misunderstood our argument, but we weren't arguing that there is inconsistency between the outcomes. We weren't saying there's something impossible about two judges finding it satisfies craft unit, two finding it satisfies community of interest. But what we were saying is we don't know why. And that, in my mind, is the heart of the problem. The board has not always been perfectly clear about the relationship of these tests. One could certainly imagine a world in which the board was always looking at a community of interest and simply looking at these craft factors as additions. I think that would be perfectly sensible and rational. When you look at the board's precedent, you just won't see that. And that's why here we think the board's going to have two majorities. One says yes to craft, and one says yes to community. It's really necessary to give us the explanation of why they matter. And, Your Honor, if I can make just one more point before sitting down. I'd like to point out what you didn't hear from my friend about the application of the community of interest test. What he didn't do was point you to a finding about what Boeing calls Step 2, an examination of the interests of the excluded employees. And what he didn't do was point you to a finding or analysis by the regional director or the board of Boeing Step 3, the industry guidelines. Can I just go back to Judge Katz's questioning? Is there a difference in the rights of the union or the employer if the unit is certified as a craft unit instead of as a unit under the community of interest test? No, Your Honor. There's no difference. Okay. All right. Anything else? Judge Katz's? Judge Rendall? No. All right. Thank you. We have your argument. We'll take the matter under advisement.
judges: Wilkins, Katsas, Randolph